MARTHA J. SHORT & others vs. C. T. CALDWELL & others.

Bristol.    October 28, 1891. — November 25, 1891.

Present: ALLEN, HOLMES, MORTON, & BARKER, JJ.

Settlement of Title — Mortgage — Non-resident — Recording of Bond.

It is no bar to a petition under the St. of 1882, c. 237, to free the record title of real estate situated in this Commonwealth from the incumbrance of an undischarged mortgage, that the respondents are non-residents.

The St. of 1882, c. 237, providing for the settlement of the record title to real estate encumbered by an undischarged mortgage, is applicable to a mortgage created by a deed absolute in form with a separate bond of defeasance; and such a bond need not be recorded to be effectual.

A mortgage was created in 1850 by a deed absolute in form, which was duly recorded in that year, with a separate bond of defeasance, which was not recorded until 1860. Held, that such recording of the bond was no bar to a petition under the St. of 1882, c. 237, filed in 1890.

PETITION, filed May 3, 1890, under the St. of 1882, c. 237,* to free the record title to real estate from the incumbrance of an undischarged mortgage. The case was heard by *Knowlton*, J., who reported it for the consideration of the full court, and was as follows.

On April 23, 1850, one Ames conveyed by an absolute deed, the consideration expressed being $2,000, to one Caldwell, his son in law, a tract of land in Easton. This deed was duly acknowledged by Ames on the same day, and was duly recorded

---

* This statute, entitled "An act relating to the settlement of titles to real estate," is as follows:

" When the record title of real estate is encumbered by an undischarged mortgage, and the mortgagor and those having his estate in the premises have been in uninterrupted possession of such real estate for twenty years after the expiration of the time limited in the mortgage for the full performance of the conditions thereof, he or they may apply to the Supreme Judicial Court by petition, setting forth the facts, and asking for a decree as hereinafter provided; and if after notice to all persons interested, by publication or otherwise as the court may order, no evidence is offered of any payment on account of the debt secured by said mortgage within said twenty years, or of any other act within said time in recognition of its existence as a valid mortgage, the court may enter a decree setting forth such facts and its findings in relation thereto, which decree shall, within thirty days, be recorded in the proper registry of deeds, and thereafter no action shall be brought by any person to enforce a title under said mortgage."

on May 7 following. Also on the same day, and as part of the same transaction, Caldwell executed a bond to reconvey the land to Ames in three years on the payment of that amount, with interest. This bond was not recorded until March 15, 1860, and was not acknowledged before a magistrate, unless by reason of its connection with the deed the acknowledgment of the deed authorized the register of deeds to treat it as an acknowledged instrument, and to record it as such. Ames remained in possession of the land until he died in 1873, and the year following his death his administrator duly sold the same to one Le Barron, and the proceeds, after payment of debts, were distributed among his heirs at law, the wife of Caldwell, who died before the filing of the bill, receiving her distributive share as such. From 1850 until about 1860 Caldwell lived within four miles from the land in question, and then removed from the Commonwealth, and died in 1873, two months before the death of Ames. Neither Caldwell nor any of his family lived on the land at any time after April 23, 1850, and there was no evidence that any of them ever claimed it; but it was proved that Ames, and those claiming under him, had been in undisturbed possession of it, under a claim of ownership, from that date to the filing of this petition.

The petitioners claimed title under Le Barron, and sought to have the record title to the land freed from the incumbrance caused by the non-discharge of the deed and bond, which were alleged to constitute a mortgage. The respondents, who were children and heirs at law of Caldwell, were not residents of Massachusetts, and no service was made on them within this State; but they appeared specially and objected to the jurisdiction of the court.

*F. S. Hall,* for the petitioners.

*R. O. Harris,* for the respondents.

ALLEN, J. The respondents contend that there is no jurisdiction to entertain this petition, because they are non-residents. If that were so, the non-residence of any one of the heirs of the mortgagee would defeat the operation of the statute. The respondents contend that the same rule is applicable to the statute under which this petition is brought (St. 1882, c. 237) as to the Pub. Sts. c. 176, authorizing the court to compel a sup-

posed claimant of land to bring an action to try his title; under which the court has declined to take jurisdiction against non-residents, unless personal service has been made within the Commonwealth. *Macomber* v. *Jaffray*, 4 Gray, 82. *Leary* v. *Duff*, 137 Mass. 147, 150. *Thompson* v. *Cowell*, 148 Mass. 552. There is, however, an important difference between the two statutes. The Pub. Sts. c. 176, authorize a decree *in personam*, while the St. of 1882, c. 237, authorizes a decree which simply operates on the estate. The respondents are not called upon to do anything under it. The estate is here, and the court may proceed to enter a decree which affects it, even though persons interested therein may be non-residents. *Spurr* v. *Scoville*, 3 Cush. 578. *Felch* v. *Hooper*, 119 Mass. 52, 57.

The respondents further contend that the St. of 1882, c. 237, does not apply to a mortgage which is created by a deed absolute in form, and a separate instrument of defeasance. We see no good reason in support of this contention. As between the parties themselves, the relation in such case is the same as if the mortgage had been in the ordinary form. *Tilden* v. *Greenwood*, 149 Mass. 567, 569, and cases there cited. And although the omission to record the bond might endanger the mortgagor's title, by enabling the mortgagee to give a good title to a third person, such record was unnecessary as between themselves. *Bryan* v. *Traders' Ins. Co.* 145 Mass. 389, 390.

It being unnecessary to record the bond, the argument as to the need of an acknowledgment of it fails, and we need not consider whether otherwise it would have weight.

The respondents also contend that recording the bond in 1860 amounted to an admission that the mortgage debt had not then been paid, and is sufficient, in the absence of positive evidence of the payment afterwards, to prevent the entry of a decree in favor of the petitioners. We are entirely unable to see how any such admission is to be inferred from the act of recording the bond. Naturally this would seem to be an act in support of the mortgagor's title, and not in disparagement of it. But if in 1860 the mortgagor admitted the mortgage debt to be then unpaid, we do not see how it goes to show any recognition of the existence of the mortgage as valid within twenty years prior to the filing of this petition, which was in 1890.

*Decree for the petitioners.*