## SAMUEL D. ELMORE *vs.* T. PUTNAM SYMONDS.

Suffolk.　February 27, 1903. — May 21, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Bankruptcy,* Rights of trustee.　*Mortgage,* Of real estate.　*Equity Jurisdiction,* Equitable lien.

The interest of a tenant by the curtesy in land which is subject to mortgages placed on it in the lifetime of his wife, vests in his trustee in bankruptcy from the date of the adjudication, and any attempted transfer by the bankrupt of rents accruing after that time would be void.

A mortgagee of real estate before entry and notice to the tenants has no right to demand or receive the rents and profits of the mortgaged property, and *semble* that a notice to the tenants not amounting to an entry or an assumption of possession would not be sufficient to give him the right.

It is no defence to an action by a trustee in bankruptcy, to recover the rents of certain real estate to which the bankrupt was entitled as tenant by the curtesy, that the defendant made an oral agreement with the bankrupt before the proceedings in bankruptcy, that the bankrupt should collect the rents and pay them to the defendant until he was reimbursed for money advanced to pay outstanding taxes on the property and the cost of putting a steam heating apparatus in each of the houses built on the land.　Even if such an agreement could be proved under the statute of frauds, it creates no lien which can be set up as an equitable defence to the claim of the trustee in bankruptcy.

CONTRACT by the trustee in bankruptcy of the estate of John H. Mullen for the rents of certain real estate to which Mullen was entitled as tenant by the curtesy.

In the Superior Court the case was tried before Sherman, J., without a jury.　He ruled that the plaintiff was not entitled to recover and found for the defendant.　The plaintiff alleged exceptions.

*A. S. Hayes & C. H. Dow,* for the plaintiff.

*H. Wardwell & J. F. Kilton,* for the defendant.

BRALEY, J.　Generally all property and rights of property belonging to a debtor at the time he is adjudicated a bankrupt are assets which pass to his trustee to be administered for the benefit of his creditors.　Though the life estate of Mullen as tenant by the curtesy was subject to first mortgages placed on the property in the lifetime of his wife, yet his interest therein could have been seised on execution and applied in payment of his debts, and the plaintiff, as his trustee, by force of law was

vested with the title thereto which dated from the time of adjudication on the petition, and the transfer thereafter of the rents as they accrued, by the bankrupt to the defendant would be void. One of the objects and purposes of a system of bankruptcy is the equal distribution of the assets of a bankrupt among his creditors, and could easily be defeated if, pending adjudication and the appointment of a trustee, the bankrupt could go on paying out the assets of his estate to his creditors. *Palmer* v. *Jordan*, 163 Mass. 350, 352. *Bank* v. *Sherman*, 101 U. S. 403, 407. *Stevens* v. *Mechanics' Savings Bank*, 101 Mass. 109, 110. *Rhoades* v. *Blackiston*, 106 Mass. 334, 336. U. S. St. 1898, c. 541, § 70.

But the defendant claims that this case is not within this rule because of an oral agreement made between him and the bankrupt, prior to proceedings in bankruptcy, that the rents of the real estate as they accrued should be collected and paid to him until he was fully reimbursed for money advanced to pay outstanding taxes on the property and the cost of putting a steam-heating apparatus in each of the houses built on the land. As part of this agreement, Mullen, on October 12, 1899, gave to the defendant a second mortgage thereon to secure the payment of a note for the sum of $3,000, which represented the money advanced. Both note and mortgage, in which he joined releasing his rights as tenant by the curtesy, were given by him as administrator of his wife's estate under a license from the Probate Court. After this the course of dealing between them seems to have been that Quincy and Company who as agents of Mullen had previously rented the houses, collected the rents and made all necessary repairs, giving him any balance that might be remaining, and who were ignorant of the agreement with the defendant, continued to collect the rents and make repairs as before, and each month made out a check for the balance to the order of John H. Mullen, administrator, and he afterwards indorsed the check over to the defendant. In this way the defendant received the payments for rents of the premises made in the months of November and December, 1899, and January, 1900. On April 30, 1900, the first mortgagees entered to foreclose the first mortgages, and on May 1, 1900, Quincy and Company at the defendant's request rendered their account to

him, and paid him the balance of the rents, after the usual deduction, that they had collected since the last payment made in January, and of this sum the plaintiff claims only so much as accrued before April 30.

As all of the money was received by the defendant after Mullen had been adjudicated a bankrupt, in order for him to retain the amount so paid he must rely either upon his mortgage or the agreement as giving him a right superior to that of the plaintiff. If the note and mortgage are considered only as collateral security for the performance of the contract, the defendant never entered upon or took possession of the mortgaged premises thereunder either for the purpose of foreclosure or to collect the rents, or gave any notice to tenants that they were to pay the rents to him. He therefore acquired no legal title under it to the rents and profits of the mortgaged property, and there being no privity of contract between himself and the tenants the defendant, though mortgagee, would have no right to demand and receive the rent from them. In order to give him such right an entry under his mortgage and notice to them was necessary. *Tilden* v. *Greenwood*, 149 Mass. 567, 569. And it is doubtful whether a notice given by a mortgagee to tenants that they are to pay their rent to him, or any other act on his part not amounting to an entry or equivalent to taking possession by him, can defeat the right of a mortgagor or those claiming under him to take the rents and profits of the mortgaged real estate. *Field* v. *Swan*, 10 Met. 112, 114. On the facts found in this case the defendant stands no better under the agreement; there was no assignment of the rents, or even an order to the tenants to pay to him. When collected by Quincy and Company, they turned over the balance, by check, to Mullen, their principal, who thereupon indorsed it to the defendant. Before any lien can arise at law in favor of the defendant, it is not enough that there is an express promise to pay from a particular fund, but there must be some positive act of appropriation on the part of the debtor whereby he ceases to control the fund, and the creditor without his aid or consent can collect the same and apply it in payment of his debt. *Hall* v. *Jackson*, 20 Pick. 194, 197. *Dillon* v. *Barnard*, 21 Wall. 430. *Ketchum* v. *St. Louis*, 101 U. S. 306, 316.

The defendant, however, sets up, by way of equitable defence, that in equity he is entitled to relief; that he had a lien under the agreement on the rents as they accrued, and that his title is paramount to that of the plaintiff.

If Mullen had failed or refused to pay over the rents, and the defendant had sought by a bill in equity to obtain specific performance of the oral agreement, claiming a lien thereon in his favor until he was repaid his disbursements, the statute of frauds could have been successfully pleaded as a bar to such relief, and it would make no difference whether such a lien is considered an implied trust or analogous to a trust, as rent, being an incorporeal hereditament, is an interest in lands. *Glass* v. *Hulbert*, 102 Mass. 24, 28. *Brown* v. *Brown*, 6 Stew. 650, 659. *Ex parte Hall*, 10 Ch. D. 615. And as he did not take possession of the premises under the agreement there is no ground for his argument that such part performance would have taken the case out of the statute upon the authority of *Potter* v. *Jacobs*, 111 Mass. 32, 37, and *Low* v. *Low*, 173 Mass. 580. But the decisive answer to such a bill on the merits must have been that under and by the terms of the contract no lien was given, and at best there was only a breach of contract by Mullen, damages for which could be recovered at law.

The suggestion that Mullen could not have recovered the money paid by him to the defendant if bankruptcy proceedings had not intervened, and that the plaintiff stands no better, is not tenable; for while Mullen might pay over his money as collected, to carry out his agreement, which was a personal promise to pay the rents as he received them, and such payment being voluntary and under no mistake of fact he would be precluded from recovering it back, he would have no right to pay over money that was a part of the assets of his estate and the title to which at the time was in the plaintiff as his trustee in bankruptcy and not subject to any incumbrance in favor of the defendant. And the fact that he became the agent of the defendant to receive the rents as collected did not change the legal effect of the contract or operate to transfer the title of the plaintiff to the defendant. *Bank* v. *Sherman, ubi supra.* *Hauselt* v. *Harrison*, 105 U. S. 401. *Winsor* v. *McLellan*, 2 Story, 492.

Neither can the argument of the defendant prevail that from

the relation of the parties such a lien arises by implication from the equities of the case and that he ought to be allowed to retain the money. No doubt having the houses heated by steam made them more desirable for the purposes of rental and enhanced the value of the property as a whole, and the disbursements made by the defendant appear to be largely in excess of the income received by him. But this is not enough in this case to give a lien implied from the alleged superior equities of the defendant.

The evidence and findings of fact show very distinctly that the defendant acted merely as the representative of the first mortgagees who furnished the money advanced by him, and that he does not stand in the position of a stranger to the property and those interested in it; and that having advanced money which was used in paying taxes and in improvements, in reliance upon Mullen's contract alone, his position has been changed for the worse by the bankruptcy of Mullen.

The defendant really stands in the place of the first mortgagees, who for some reason not disclosed did not desire to act themselves directly, but through him furnished the money which was used primarily for the benefit of the real estate upon which they had a first lien and incumbrance by way of mortgage.

To allow the claim of the defendant would give him a preference over unsecured creditors to which he is not entitled, and if the defendant had no title to or valid incumbrance on the money received by him from Mullen, the equities are at least equal and the plaintiff's legal title must prevail. *Ellis* v. *Boston, Hartford & Erie Railroad,* 107 Mass. 1, 32. *Lighthouse* v. *Third National Bank,* 162 N. Y. 336. *Gladstone* v. *Birley,* 2 Meriv. 401.

No exact definition to fit all cases can be given of a constructive lien, as the rights of the parties, out of which, if at all, such a lien must arise, vary with the varying facts of each case ; but the tendency is not to create such a lien unless by the express or implied terms of the contract it clearly appears that this was the intention of the parties.

We are of opinion that where nothing more appears than an agreement, whether oral or in writing, by the owner of real estate to collect, either personally or by his agents, the rents that may accrue therefrom and turn them over to his creditor in pay-

ment of a debt, even though the money represented by the debt has been used to increase the value of the property, equity will not, in the absence of a stipulation to that effect, or of language from which such an intention clearly appears, create a lien or charge upon the estate or the rents arising therefrom to secure the creditor. *Pinch* v. *Anthony,* 8 Allen, 536. *Falmouth National Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 567. *Rogers* v. *Hosack,* 18 Wend. 319, 334. *Morton* v. *Naylor,* 1 Hill, 583. *Richards* v. *Arms Shingle & Lumber Co.* 74 Mich. 57. *Wright* v. *Ellison,* 1 Wall. 16. *Walker* v. *Brown,* 165 U. S. 654.

It follows that the money received by the defendant as the balance of rents from the real estate as well as the sum collected by him, being after the date of the adjudication of Mullen as a bankrupt, was income from real estate the absolute title to which by operation of law had vested in the plaintiff as trustee, and belonged to him as assets of the bankrupt's estate, and may be recovered in this action under a declaration for money had and received. *Hills* v. *Bearse,* 9 Allen, 403. *Atkins* v. *Equitable Assurance Society,* 132 Mass. 395.

*Exceptions sustained.*